PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JK PRODUCTS AND SERVICES, INC., | ) | |
| | ) | CASE NO. 1:19CV1908 |
| Plaintiff/Counterclaim | ) | |
| Defendant, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| JLW-TW CORP., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | **ORDER** |

Having been issued a Temporary Restraining Order, Defendant/Counterclaimant JLW-

TW now seeks a Preliminary Injunction. ECF No. 11. Plaintiff/Counterclaim Defendant JK

Products opposes further injunctive relief. ECF No. 25. Having been advised by a review of the

record, applicable law, oral argument, and presentation of evidence, the Court denies JLW-TW's

request for preliminary injunction.

**I. Background**

This action arises out of a business relationship between JK Products and JLW-TW that

spans over 14 years. JK Products is a leading manufacturer of commercial indoor tanning

equipment. JLW-TW is a leading full-service distributor of tanning equipment and has been a

distributor in JK Products' network since 2005 when the parties entered their first contractual

agreement. ECF No. 7-3 at PageID #: 135. The agreement signed in 2005 anticipated annual

one-year renewals through 2008. In 2009, past the duration anticipated in the 2005 agreement,

the parties undertook mediation to resolve issues that had arisen between them. This process

(1:19CV1908)

resulted in the creation of a 2009 settlement terms agreement.[1] For the past nine years, the

parties have continued to work together, albeit sometimes under strain, under terms largely

established by the only written agreements produced to date.[2] Both parties have substantially

invested in their business dealings with one another.

On August 20, 2019, JLW-TW met with JK Products at its yearly distributors' meeting in

Houston, Texas. During the course of the parties' meeting, JK Products presented JLW-TW with

a short-term agreement, which JLW-TW was given three days to sign. ECF No. 6 at PageID #:

36. After reviewing the agreement, JLW-TW determined that the short-term contract was not

beneficial to its business.[3] On August 26, 2019, JLW-TW's counsel submitted a letter to JK

Products opposing the terms of the Short-Term Agreement and asking for mediation. ECF No.

7-3 at PageID #: 183-84. On August 30, 2019, JK Products responded, stating that it was

terminating its relationship with JLW-TW effective September 30, 2019 and outlined terms for

separation and management of any ongoing dealings. Id. at PageID #:185-86.

---

[1] At the Preliminary Injunction Hearing, both parties conceded that settlement
terms were entered into on April 29, 2009. ECF No. 25-2. Their "settlement" agreement
is handwritten and fully executed.

[2] During the Preliminary Injunction Hearing, both sides described the course of
the parties' relationship over time. The parties have restructured JLW-TW's territory in
the JK Products network, expanded and retracted exclusive rights, altered payment
schemes, and even camouflaged the appearance of JLW-TW's employees to appease a
large client.

[3] JLW-TW alleges that the short-term contract would require them to waive
critical distributorship rights and the right to pursue relief against JK Products for past
acts. ECF No. 6 at PageID #: 36.

Consequently, JLW-TW sought a Temporary Restraining Order [ECF No. 7] on the basis

of breach of contract and breach of good faith and fair dealing.  ECF No. 7-1 at PageID #: 113.

With due consideration, the Court granted JLW-TW's motion for temporary restraining order

after a hearing on September 6, 2019 and ordered that a bond in the amount of $100,000 be

posted by JLW-TW.  ECF. No 11.   With agreement of the parties, the Court scheduled a

preliminary injunction hearing for September 23, 2019 to determine whether further injunctive

relief was necessary.

## II. Law and Analysis

Fed. R. Civ. P. 65 requires the Court to balance four factors when determining whether a

preliminary injunction should issue.  The factors are: (1) likelihood of success on the merits; (2)

irreparable harm absent injunctive relief; (3) substantial harm to others from the proposed

injunction; and (4) the broader public interest.  *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867

F.3d 616, 622 (6th Cir. 2017).  These four considerations are "factors to be balanced, not

prerequisites that must be met."  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke*

*Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476

(6th Cir. 2003), *abrogated on other grounds by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th

Cir. 2015)).  "The district judge 'is not required to make specific findings concerning each of the

four factors used in determining a motion for preliminary injunction if fewer factors are

dispositive of the issue.'"  *Id*.  "Although no one factor is controlling, a finding that there is

simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med.*

*Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

(1:19CV1908)

In balancing the four considerations applicable to preliminary injunctions, the Court finds that further equitable relief is not appropriate.

### 1. Likelihood of Success on the Merits

The first factor considered is "whether the plaintiff has demonstrated a strong likelihood of success on the merits." *Certified Restoration*, 511 F.3d at 543. While a party is not required to prove its entire case, to establish success on the merits, a plaintiff must show "more than a mere possibility of success." *Id*. JLW-TW maintains that it is likely to succeed on the merits of its action against JK Products for breach of contract and breach of the duty of good faith and fair dealing. For the reasons below, JLW-TW has failed to demonstrate a likelihood of success on either claim.

### A. Breach of Contract

In Ohio, "[a] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach." *Lawrence v. Lorain Cnty. Cmty. Coll.*, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998).

There is no dispute that the parties' relationship commenced with the execution of the 2005 agreement and that subsequent to the parties' mediation in 2009, they executed a settlement terms agreement.[4] ECF No. 25-2. This handwritten product of the April 29, 2009 mediation

---

[4] ECF No. 7-3 at PageID #: 135; *see also* ECF No 25 at PageID #: 328.
("Although the parties intended to reduce the 2009 Term Sheet to a formal Settlement

(continued...)

4

(1:19CV1908)

described accounting and payments owed, addressed changes to JLW-TW's territory, included a termination without recourse clause, and a "1 year contract" exclusivity clause. ECF No. 23-2 at PageID #: 306. Despite the parties' myriad disagreements, both concede the validity of the 2005 agreement and 2009 settlement terms agreement. Importantly, the settlement terms agreement is evidence of a formal agreement through at least April 2010.

The Court finds that after the expiration of any formal agreement, the course of performance over the past nine years is sufficient to show an implied contract.[5] *See Cloverdale Equip. Co. v. Manitowoc Eng'g Co.*, 149 F.3d 1182 (6th Cir. 1998) (finding that an implied contract was entered upon expiration of an express written contract where the parties continued to perform)(unpublished table opinion); *see Comenos v. Viacom Int'l, Inc.,* 857 F. Supp. 1160, 1164-65 (E. D. Mich. 1994); *see also* E. Allen Farnsworth, Farnsworth on Contracts § 7.13 at 283 (1990) (stating that it is a principle of contract law that "an agreement is to be read in the light of the parties' previous dealings").

That said, the Court is not convinced that JK Products has breached the parties' implied contract by terminating its business relationship with JLW-TW, effective September 30, 2019.

---

[4](...continued)
Agreement and exchanged drafts of the same, no final contract was ever accepted or executed by JK.")

[5] Under Ohio law, to determine the existence of an implied contract, the parties' meeting of the minds is inferred from the "surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that a contract exists as a matter of tacit understanding." *Stepp v. Freeman*, 694 N.E.2d 510, 514 (Ohio Ct. App. 1997). In this case, an implied contract has been created as the circumstances surrounding the parties' continued transactions with one another make it reasonably certain that a binding agreement was intended.

There is no indication in either the 2005 or 2009 agreements that JK Products is prohibited from

terminating its contractual relationship with JLW-TW. In fact, both documents give JK Products

the opportunity to terminate its agreement with JLW-TW when it has found JLW-TW to be in

default.[6]

Therefore, based on the evidence before it, the Court finds that JK Products was not

prohibited from terminating its relationship with JLW-TW. Accordingly, JLW-TW is unlikely to

succeed on the merits of its breach of contract claim.

### B. Breach of Good Faith and Fair Dealing

In seeking a preliminary injunction, JLW-TW also alleges that JK Products breached its

duty of good faith and fair dealing by attempting to impose new restrictions on their

distributorship relationship and by abruptly ending its business relationship with JLW-TW. ECF

No. 7-1 at PageID #: 108. JLW-TW alleges that "[o]n essentially three days' notice, JK

demanded that [JLW-TW] abruptly realign a decades-long relationship for JK's exclusive

benefit" and that this "extortion-by-contract" is inconsistent with the duties of good faith and fair

dealing inherent in the parties' agreement. *Id.*

JK Products retorts that it terminated its relations with JLW-TW due to default. While

the record is not fully developed, JK Products has presented evidence of default. The record also

---

[6] *See* ECF No. 25-1 at Page ID #: 345 ("Distributor shall be deemed to be in
default, and [JK Products] shall have the right to terminate this Agreement, effective
immediately on mailing of written notice of termination, in the event of the occurrence
of... (ix) fails to pay due when any amount owed to [JK Products] or its affiliated
entities."); *see also* ECF No. 25-2 at PageID #: 360 ("Any default herein is grounds for
termination without recourse.").

reveals that JK Product's decision to terminate rather than repair the relationship is in stark contrast to its responses to past perceived default. By its own admission, for years, JK Products has tolerated JLW-TW's "poor service, inability to pay and willingness to sell and promote competing brands." ECF No. 25 at PageID #: 333. While this decision to realign or be terminated within 30 days appears to be an abrupt change from past responses, given the default clauses apparent in both the 2005 and 2009 agreements, the Court finds that JK Products was permitted to terminate JLW-TW for "[being] in continual breach of the [15(c) provisions]."[7] ECF No. 25 at PageID #: 334.

Therefore, at this juncture, JLW-TW has failed to demonstrate a likelihood of success on the merits of its breach of duty of good faith and fair dealing claim.[8] In sum, this factor weighs against granting a preliminary injunction.

**2. Irreparable Injury**

Under the second factor, JLW-TW must carry its burden of alleging irreparable harm should the Court fail to grant its motion.

JLW-TW asserts that, by rerouting jobs previously allocated to JLW-TW and "mov[ing] work in-house," JK Products is "claiming for itself" the value of its distributors' work, harming JLW-TW's business, and eroding JLW-TW's customer good will. ECF No. 7-1 at PageID #:

---

[7] JK Products presented evidence at the hearing of entitlement to terminate the parties' relationship. Allegedly, JLW-TW has consistently failed to pay amounts when due and payable, including but not limited to, a current outstanding balance of over $100,000.

[8] This ruling should not be mistaken for law of the case on this point.

112-13.  JLW-TW also asserts that its reputation as a distributor in the tanning industry is at great

risk.  ECF No. 26 at PageID #: 475.  The Sixth Circuit has found the loss of goodwill from

existing and prospective customers to be irreparable. *See Mich. Bell Tel. Co. v. Engler, 257 F.3d*

*587, 599 (6th Cir. 2001)* ("[L]oss of established goodwill may irreparably harm a company" and

its jeopardize a party's competitiveness in the market); *see also Basicomputer Corp. v. Scott, 973*

*F.2d 507, 512 (6th Cir. 1992).*   While effect on JLW-TW's customers and employees must be

considered in evaluating irreparable injury, it does not control in this case.

　　　The evidence shows that a significant percentage of JLW-TW's business is derived from

the service work it provides to JK Products' customers, specifically one or two large accounts.

Thus, it has become clear that, without terms requiring a continuing relationship between the

parties, these customers cannot be deemed to *belong* to JLW-TW.  Additionally, arguably

January 2020 marks the natural end of the most recent annual agreement.  The sincere break up at

issue was advanced by JK Product's letter of August 30, 2019, which gave a thirty-day notice of

termination.  While JLW-TW may have preferred a more civil and ordered separation, there was

no agreement or course of dealing requiring such.  This cuts against JLW-TW's claim of

irreparable harm.[9]  In other words, at some point, the relationship could end and JK Products, to

the chagrin of JLW-TW, has written this script.

---

　　　[9] Under the terms of the Court's Temporary Restraining Order, JK Products was
required to continue to conduct business with JLW-TW [ECF No. 11] until resolution of
the preliminary injunction.  The Court will consider JK Products' alleged non-compliance
with that order when it resolves the pending motion for contempt.  ECF No. 19.

Lastly, "[i]t is well settled that 'a plaintiff's harm is not irreparable if it is fully compensable by money damages.'" *Bearing Distributors, Inc. v. Rockwell Automation, Inc.*, No. 1:06CV831, 2006 WL 1174279, at *7 (N. D. Ohio Apr. 28, 2006) (quoting *Basicomputer Corp.*, 973 F.2d at 511). While JLW-TW may be injured as a result of JK Products' decision to take its business elsewhere, it remains that JK Products is not contractually bound to maintain JLW-TW as a distributor. Furthermore, evidence presented at the Preliminary Injunction Hearing indicates that JLW-TW's harm is compensable. JLW-TW's witness testified that a measurable percentage of JLW-TW's business output is tethered to JK Products' business operations and referrals. At the hearing, JK Products also advanced that JLW-TW makes a specified percentage on each installation referred to them by JK Products. Because each of JK Products' sales will be absorbed by JK Products in-house or allocated to other distributors, JLW-TW's harms are both identifiable and quantifiable. Thus, JLW-TW can be compensated by monetary damages.

Accordingly, this factor does not weigh in favor of granting the preliminary injunction.

### 3. Substantial Harm to Others

Next, the Court must determine whether the injunction would cause harm to others. In consideration of this factor, the Court must also consider the harm that may be inflicted upon the non-movant by the issuance of the preliminary injunction. *See*, *e.g.*, *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006). "But neither this nor any single preliminary-injunction factor is dispositive." *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 33 (6th Cir. Aug. 11, 2011). The Court "must thus grant or deny an injunction as the balance of the equities requires, even though its decision may place one party in financial peril." *Id*.

9

In forcing the parties to remain in business with one another despite the absence of an obligation to do so, JK Products would be compelled to go against its own interests. It would be required to use JLW-TW as an exclusive distributer of its products, despite evidence that JK Products believes it risks losing credibility in the community, goodwill of its own customers, and ultimately autonomy over its business affairs. ECF No. 25 at PageID #: 338-39. While JLW-TW advances similar concerns, nothing in the parties written agreements or course of dealings require that they remain paired beyond their mutual willingness to do so.

On balance, this factor neither weighs in favor of or against granting equitable relief.

### 4. Public Interest

The final factor the Court must consider is whether the public interest will be served by granting a preliminary injunction in this case. JLW-TW argues that an injunction would promote the public interest in the enforcement of bargained for contractual agreements and a robust duty of good faith and fair dealing. ECF No. 7-1 at PageID #: 113. There is undoubtedly a public interest in promoting the enforcement of existing, enforceable contractual agreements. In the case at bar, however, their agreements and past performance permit but do not demand annual renewal or even a more ordered, civil separation.[10] Therefore, this factor weighs against granting the motion.

---

[10] ECF No. 7-3 at PageID #: 135 (The 2005 agreement provides that JK Products may extend the contract by providing a formal written notice of renewal.).

(1:19CV1908)

## IV. CONCLUSION

For the foregoing reasons, Defendant/Counterclaimant JLW-TW's Motion for

Preliminary Injunction is denied.  A separate case management order will issue.


IT IS SO ORDERED.


 September 25, 2019                         */s/ Benita Y. Pearson*
Date                                    Benita Y. Pearson
                                           United States District Judge