PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JK PRODUCTS & SERVICES, INC., | ) | CASE NO.  1:19-CV-1908 |
| | ) | |
| Plaintiff/Counterclaim | ) | |
| Defendant, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| JLW-TW CORP., | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Defendant/Counterclaimant. | ) | [Resolving ECF Nos. 61, 63, 64, 73, 85] |

Pending are Plaintiff JK Products & Services, Inc. ("JK Products")'s Motions for

Summary Judgment (ECF No. 61) and to Strike Jury Demand (ECF No. 63).  Also pending is

Defendant JLW-TW Corp. ("JLW-TW")'s Motion for Leave to File Answer *Instanter* to First

Amended Complaint and Amended Counterclaim.  ECF No. 64.  The motions have been fully

briefed.  Having reviewed the parties' filings and the applicable law, the Court grants Plaintiff's

Motion for Summary Judgment in part, grants Plaintiff's Motion to Strike Jury Demand, and

denies Defendant's Motion for Leave to File Answer *Instanter* to First Amended Complaint and

Amended Counterclaim.

## I.  Background

This action arises out of a failed distributor relationship between two companies.  *See*

ECF No. 60 at PageID #: 2692-94.  Plaintiff JK Products is an Arkansas corporation engaged in

the manufacturing of commercial indoor tanning equipment.  ECF No. 44 at PageID #: 618.

(1:19CV1908)

Defendant JLW-TW is an Ohio corporation and a full-service distributor of tanning equipment.
ECF No. 6 at PageID #: 31.

Business dealings between the parties began in September 2005 when the parties signed a distributorship agreement which anticipated one-year renewals through 2008.  ECF No. 60 at PageID #: 2692; ECF No. 60-1 at PageID #: 2695.  Pursuant to the parties' distributorship agreement, JLW-TW served as a distributor of JK Products' tanning equipment.  ECF No. 60-1 at PageID #: 2696.  In 2009, the parties undertook mediation to resolve a number of issues that had arisen between them–including open receivables owed by JLW-TW to JK Products.  *See* ECF No. 60 at PageID #: 2692; ECF No. 61-1 at PageID #: 2737.  In 2009, the parties produced a handwritten terms agreement which amended the 2005 distributorship agreement.  ECF No. 60 at PageID #: 2692-93.  The handwritten product of the parties' 2009 mediation described accounting and payments owed, addressed changes to JLW-TW's territory, included a termination without recourse clause, and noted a one-year exclusivity clause.  *See* ECF No. 60-2.  All other provisions of the 2005 distributorship agreement remained in effect throughout the duration of the parties' relationship.  *See* ECF No. 60 at PageID #: 2693.  Between May 2018 and September 2018, the parties engaged in discussions in an effort to resolve their lingering issues.  *Id*. at PageID #: 2693.  In August 2019, the parties were unable renegotiate a new short-term distributorship agreement.  ECF No. 61-3 at PageID #: 2764, 2770-79.  JK Products terminated its relationship with JLW-TW effective September 30, 2019.  *See* ECF No. 61-1 at PageID #: 2735.

2

(1:19CV1908)

JK Products filed a two-count complaint asserting claims for action on account and unjust enrichment.  *See* ECF No. 1, ECF No. 44 (amended).  Plaintiff seeks $182,708.30 for amounts it alleges JLW-TW owes on parts and units received.  *See* ECF No. 61-1 at PageID #: 2739.  JLW-TW filed a five-count counterclaim alleging breach of contract, breach of duty of good faith and fair dealing, conversion, promissory estoppel, and tortious interference with business relationships.  *See* ECF No. 6.

At the outset of this litigation, JLW-TW filed a motion for temporary restraining order in an effort to prevent JK Products from terminating the parties' distributorship agreement.  ECF No. 3.  The Court granted JLW-TW's request for a temporary restraining order and scheduled a hearing on JLW-TW's motion for preliminary injunction.  ECF No. 11.  After holding a hearing on JLW-TW's motion for a preliminary injunction, the Court denied JLW-TW's request for further injunctive relief, finding JK Products was no longer contractually bound to maintain JLW-TW as a distributor.  *See* ECF No. 29 at PageID #: 503 ("While JLW-TW may be injured as a result of JK Products' decision to take its business elsewhere, it remains that JK Products is not contractually bound to maintain JLW-TW as a distributor.").

JK Products filed the instant motion for summary judgment on all claims.  ECF No. 61. JLW-TW filed an opposition to JK Products' Rule 56 motion alleging, *inter alia,* that genuine issues of material fact exist regarding the proper net accounting of money and credits owed between the parties.  *See* ECF No. 84 at PageID #: 4473.[1]

---

[1] The parties have since filed a number of other motions born out of their dispute, most of which will be resolved herein.

3

(1:19CV1908)

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F. 3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trs*, 980 F. 2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox. v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Aickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

4

(1:19CV1908)

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The fact under dispute must be "material," and the dispute itself must be "genuine."  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Scott*, 550 U.S. at 380.  In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict.  *Id.* ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

**III.  Analysis**

JK Products avers it is entitled to summary judgment on its claims for action on account and unjust enrichment, and on JLW-TW's counterclaims for breach of contract, breach of duty of good faith and fair dealing, conversion, promissory estoppel, and tortious interference with business relationships.  *See* ECF No. 61-1 at PageID #: 2739-54.

**A.  Plaintiff's Claims**

**1.  Action on Account**

JK Products seeks summary judgment on its claim for action on account, in the amount of $182,708.30, for equipment obtained by JLW-TW in the course of the parties' business dealings. *See id.* at PageID #: 2739.

Under Ohio law, an action on account is "an unsettled claim or demand by one party against another, based upon a transaction creating a debtor relation[ship] between the parties."

5

(1:19CV1908)

*Johncol, Inc. v. Cardinal Concession Servs., LLC*, 101 N.E.3d 1014, 1019 (Ohio Ct. App. 2017).

The cause of action exists only as to the balance that may be due to one of the parties as a result

of the series of transactions.  *Id.* (citing *Benchmark Contrs., Inc. v. Southgate Mgt., LLC*, Nos.

13AP-390, 13AP-394, 2014 WL 1347740 at *8 (Ohio Ct. App. Mar. 27, 2014).  An action on

account is "founded upon contract" and constitutes a breach of contract claim.  *Id.* (internal

quotations omitted).

A party seeking to establish an action on account must demonstrate the following: (1) the

existence of an account, including that the account is in the name of the party charged; (2) a

beginning balance of zero, or a sum that can qualify as an account stated, or some other provable

sum; (3) listed items, or an item, dated and identifiable by number or otherwise, representing

charges, or debits, and credits; and (4) summarization by means of a running or developing

balance, or an arrangement of beginning balance and items that permits the calculation of the

amount claimed to be due.  *Id.* at 1020 (citations omitted).  Credits and debits must allow the

Court to determine the total claimed to be due and owing.  *Id.*  Ohio courts have found a copy of

a ledger sheet, or an accounts receivable record, will ordinarily meet the requirements of an

account.  *See id.* at 1021.

JK Products has attached to its motion for summary judgment an invoice dated March 23,

2017, listing a $200,000.00 amount "billed to" JLW-TW for a "slow moving parts purchase" for

"ETS parts."[2]  ECF No. 61-2 at PageID #: 2762.  Also attached to Plaintiff's motion is a

_____

[2] Scott Karse, a current employee of JLW-TW, testified that he issued the
$200,000.00 purchase order at issue, that the Ergoline parts ("ETS parts") and units

(continued...)

6

(1:19CV1908)

corresponding ledger sheet, reflecting a balance owed of $182,708.30.  *Id*. at PageID #: 2758-60.

Accompanying these documents is the affidavit of Executive Director of Finance for JK

Products, Melissa Russell.  *Id*. at PageID #: 2756-57.  Russell avers that JLW-TW owes

$182,708.30 for parts and units received between 2017 and 2019.  *See id.*

       With the aforementioned, JK Products has established the elements for an action on

account.  It has provided a copy of the account naming the party to be charged (JLW-TW),

established the balance due, and itemized debits and credits on the account.  JLW-TW, however,

asserts there are genuine issues of material fact regarding the "proper net accounting of

money/credits owed between the parties."  ECF No. 84 at PageID #: 4473.[3]  In support of its

assertion, JLW-TW attached an accounts receivable record indicating JK Products owes JLW-

TW at least $141,671.37 in credits.  *See* ECF No. 84-1 at PageID #: 495.  Accompanying this

document is the declaration of JLW-TW's President, William Gallagher.  *Id*. at PageID #: 4486.

Gallagher avers JK Products did not properly extend credit terms to JLW-TW, "purposefully

refus[ed] to credit or [was] slow to credit [JLW-TW] on various items" and has sought to avoid

paying commissions and installation fees amounting to over $100,000.00.  *Id*. at PageID #: 4489-

92.

---

[2](...continued)
purchased in that order were received by JLW-TW, and that the parts and units are still
being sold by JLW-TW.  *See* ECF No. 55 at PageID #: 2075-77.

   [3] Specifically, JLW-TW argues the parties have a history of trading credits and
debits, and using credits and debits to offset net amounts owed between the parties.
JLW-TW also avers that at the start of the instant lawsuit, JLW-TW was in a balance-
positive position.  *See* ECF No. 84 at PageID #: 4469-78.

(1:19CV1908)

JK Products has moved for summary judgment. Therefore, all facts are construed in the light most favorable to JLW-TW, "except when the record 'blatantly contradict[s]' it 'so that no reasonable jury could believe it.'" *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014) (quoting *Scott*, 550 U.S. at 378–80). Because there exist genuine issues of material fact as to sums owed between the two companies, JK Products' motion for summary judgment on its action on account claim is denied.

### 2. Unjust enrichment

In addition to its action on account claim, JK Products argues it is entitled to relief on its unjust enrichment claim. Plaintiff asserts it conferred a substantial benefit on JLW-TW, JLW-TW was aware of this benefit, and JLW-TW's retention of more than $180,000.00 worth of JK Products' inventory is unjust. *See* ECF No. 61-1 at 2739-45.

"It is well-settled that a claim for unjust enrichment will not lie in the face of a valid and enforceable contract." *MMI Textiles, Inc. v. Short Bank Indus., Inc.*, No. 1:16CV2752, 2017 WL 1969465, at *1 (N.D. Ohio May 10, 2017) (Gaughan, J.) (citing *Ullmann v. May*, 72 N.E.2d 63 (Ohio 1947)); *see also Cincinnati Tyrolit, Inc. v. A.R. Soltis & Co.*, No. 1:06-CV-00665, 2009 WL 1759598, at *6 (S.D. Ohio June 17, 2009) (finding "[a]lthough of course it would be unjust to allow Defendant to retain the benefit conferred upon it by Plaintiff, there is no need to resort to a theory [of] quasi-contract when the evidence of the account here establishes the contractual relationship between the parties").

8

(1:19CV1908)

Because a valid and enforceable contract governs the instant dispute, a claim for unjust enrichment does not lie against JLW-TW.  Accordingly, summary judgment is denied on JK Products' unjust enrichment claim.

### B.  Defendant's Counterclaims

#### 1.  Breach of Contract

JLW-TW alleges JK Products breached the parties' distributorship agreement when it unilaterally cancelled the parties' distributorship agreement effective September 2019, and failed to pay or credit sums owed to JLW-TW.  *See* ECF No. 6 at PageID #: 38.

In Ohio, "[a] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach." *Lawrence v. Lorain Cnty. Cmty. Coll.*, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998).

As noted, the parties' contractual relationship commenced with the execution of the 2005 distributorship agreement.  Subsequent to mediation in 2009, the parties executed a terms agreement which amended the 2005 agreement.  Upon the expiration of the written agreement and amendment (circa 2010), the parties' continued course of performance constituted an implied contract.  *See Cloverdale Equip. Co. v. Manitowoc Eng'g Co.*, 149 F.3d 1182 (6th Cir. 1998) (finding that an implied contract was entered upon expiration of an express written contract where the parties continued to perform).  The parties operated under a binding distributorship

9

(1:19CV1908)

agreement from September 2009 until September 2019, when JK Products terminated JLW-TW

as a distributor.

### a. Termination of the Parties' Distributorship Agreement

Section 15(c) of the 2005 distributorship agreement provides in pertinent part:

> [JLW-TW] shall be deemed to be in default, and [JK Products] shall have the right
> to terminate this Agreement effective immediately in mailing of written notice of
> termination, in the event of the occurrence of any of the following: [JLW-TW] . . .
> (iii) [ ] violates its obligations under Section 4[4] . . .  (ix) fails to pay when due any
> amount owed to [JK Products] . . . [x] breaches any other provision of this
> Agreement and fails to cure the breach within (15) days afer mailing by [JK
> Products] of written notice of breach and demand for cure.  Such notice and
> opportunity to cure shall not be required in circumstances in which [JK Products]
> believes, in good faith, that there is not a likelihood of cure.

ECF No. 60-1 at PageID #: 2699 (footnote added).

As the Court found in its Order denying JLW-TW's motion for a preliminary

injunction–and as written in a subsequent Order clarifying the parties' responsibilities–effective

September 30, 2019, JK products "lawfully terminated its contractual relationship with JLW-

TW."  *See* ECF No. 34 at PageID #: 532 (citing ECF No. 29 at PageID #: 500) ("[B]oth

documents give JK Products the opportunity to terminate its agreement with JLW-TW when it

has found JLW-TW to be in default.")).  Additional evidence has since been produced

confirming JLW-TW's failure to uphold its obligations under the parties' distributorship

agreement, including but not limited to evidence that JLW-TW provided poor customer service

---

[4] Section 4 of the 2005 distributorship agreement requires JLW-TW to use its best efforts to sell, promote, service and educate with regard to JK Products' equipment. JLW-TW must also "promptly meet its sales and service obligations."  ECF No. 60-1 at PageID #: 2696.

10

(1:19CV1908)

to shared customers (ECF No. 61-3 at PageID #: 2763-64); failed to use its best efforts to sell,

promote, and service JK Products' equipment (ECF No. 57 at PageID #: 2334-37); failed to pay

amounts when due and payable (ECF No. 61-2); and failed to correct customer satisfaction issues

(ECF No. 25-9 at PageID #: 424-27; ECF No. 61-3 at PageID #: 2764).

JK Products did not breach the parties' contract when it terminated JLW-TW as a

distributor for cause effective September 30, 2019.  To the extent JLW-TW asserts a breach of

contact claim due to JK Products' termination of the parties' fourteen-year distributorship

agreement, summary judgment is granted in favor of JK Products on this issue.

### b.  Failure to Credit Sums Owed to JLW-TW

As indicated above, genuine issues of material fact exist regarding the proper crediting of

sums owed between the parties.  To the extent JLW-TW asserts a breach of contract claim due to

JK Products' failure to properly credit JLW-TW with applicable credits, pursuant to the parties'

distributorship agreement in effect until September 2019, summary judgment is denied on this

issue.

### 2.  Breach of Duty of Good Faith and Fair Dealing

JLW-TW asserts a claim against JK Products for breach of the duty of good faith and fair

dealing.  *See* ECF No. 6 at PageID #: 39.  JK Products avers this claim fails as a matter of law

because Ohio does not recognize such a cause of action.  *See* ECF No. 61-1 at PageID #: 2746.

The Court agrees.  Ohio law does not recognize an independent claim for breach of good

11

(1:19CV1908)

faith and fair dealing.  *See Mortg. Elec. Regis. Sys., Inc. v. Mosley*, No. 93170, 2010 WL

2541245, at *11 (Ohio Ct. App. June 24, 2010); *Wendy's Int'l, Inc. v. Saverin*, 337 F. App'x 471,

476 (6th Cir. 2009) (noting the implied duty of good faith and fair dealing "does not create an

independent basis for a cause of action" under Ohio law; *Thomasville Furniture Indus., Inc. v.

JGR, Inc.*, 3 F. App'x 467, 472 (6th Cir. 2001) (noting the covenant of good faith and fair dealing

is a "salutary rule of construction" implied in every contract under Ohio law, "but not a basis for

a cause of action").

Accordingly, summary judgment is granted in favor of JK Products on JLW-TW's claim

of breach of duty of good faith and fair dealing.

### 3.  Conversion[5]

JLW-TW avers JK Products has converted the customer goodwill and work-in-process of

JLW-TW, and that, as a result, it has suffered harm to its business.  ECF No. 64-1 at PageID #:

2822.  JK Products avers it is entitled to summary judgment on JLW-TW's claim because Ohio's

economic-loss rule prevents tort recovery for such loss.  *See* ECF No. 61-1 at PageID #: 2748-50.

Under Ohio law, the essential elements of conversion are: (1) plaintiff's ownership or

right to possess the property at the time of the conversion; (2) defendant's conversion by a

---

[5] JLW-TW has failed to meet its burden under Fed. R. Civ. P. 56 with regard to its
conversion claim because it did not properly respond to any of the arguments asserted by
JK Products in its motion for summary judgment with regard to this claim.  *See Clark v.
City of Dublin, Ohio*, 178 F. App'x 522, 525 (6th Cir. 2006) (finding district court
properly granted summary judgment on claims when party failed to respond to opposing
arguments in support of summary judgment).  Nevertheless, the Court undertakes an
analysis regarding this claim.

(1:19CV1908)

wrongful act or disposition of plaintiff's property; and (3) damages. *Kuvedina, LLC v. Cognizant Tech. Sol.*, 946 F.Supp.2d 749, 761 (S.D. Ohio 2013) (citing *Haul Trans. of VA, Inc. v. Morgan, No. CA 14859, 1995 WL 328995, at \*3 (Ohio Ct. App. June 2, 1995)*).

Ohio's "economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005); *see also Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (noting [e]conomic losses include not only diminution in value and consequential losses like lost profits, but also . . . the loss of electronic funds and failed investments."). This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that "parties to a commercial transaction should remain free to govern their own affairs." *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins.* Co., 537 N.E.2d 624, 628 (Ohio 1989).

JLW-TW's asserted "loss" of customers and installation work falls squarely within the economic loss doctrine. Although it is unfortunate that JLW-TW lost shared[6] customers and work in the course of the parties' separation, there is no independent duty or right–outside of the parties' contract–which would entitle JLW-TW to the work-in-process, or customers, it claims it is entitled to.

---

[6] The evidence reveals that a significant portion of JLW-TW's business is derived from the service work it provides to JK Products' customers, specifically several large accounts such as Crunch Fitness and Planet Fitness. *See* ECF No. 84-1 at PageID #: 4490.

(1:19CV1908)

Accordingly, summary judgment is granted in favor of JK Products on JLW-TW's conversion claim.

### 4. Promissory Estoppel

In Ohio, promissory estoppel is a quasi-contractual concept wherein a court in equity seeks to prevent injustice by "effectively creating a contract where none existed." *Interstate Gas Supply, Inc. v. Calex Corp.*, No. 04AP-980, 2006 WL 328679 at *21 (Ohio Ct. App. 2006); *see also Telxon Corp. v. Smart Media of Delaware, Inc., Summit App.* No. 22098, 22099, 2005 WL 2292800 at *21 (Ohio Ct. App. 2005) ("[t]he doctrine of promissory estoppel aids the enforcement of promises by supplying the element of consideration when necessary to prevent injustice."). This equitable remedy is not available when a contract exists between the parties. *Heidtman Steel Prod., Inc. v. Compuware Corp.*, No. 3:397CV7389, 2000 WL 621144, at *16 (N.D. Ohio 2000).

The parties do not dispute that an enforceable distributorship agreement governed the parties' relationship between September 2005 and September 2019. *See* ECF No. 60. Accordingly, JLW-TW's promissory estoppel claim fails due to the existence of an applicable contract. Summary judgment is granted in favor of JK Products on this claim.

### 5. Tortious Interference with Business Relationships

JLW-TW argues JK Products intentionally and unlawfully interfered with JLW-TW's business relationships with its customers when JK Products rescheduled work JLW-TW had planned to do for JK Products beginning in September 2019; allegedly misrepresented the nature

14

(1:19CV1908)

of the parties' relationship to mutual customers in the industry; and removed JLW-TW from its business altogether. *See* ECF No. 6 at PageID #: 40.

In order to establish a claim for tortious interference with a business relationship or contract, a party must demonstrate the following: (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. *Gracetech Inc. v. Perez*, No. 96913, 2012 WL 589473, at *5 (Ohio Ct. App. 2012).

JLW-TW's claim of tortious interference fails for similar reasons that its breach of contract and conversion claims do. JLW-TW cannot show that JK Products took any improper action by its termination of the parties' distributorship agreement. Because the parties shared customers in the commercial indoor tanning industry, ( ECF No. 58 at PageID #: 2537-40), it was a natural consequence of the parties' permanent uncoupling that JK Products would divert its installations, and other work, away from JLW-TW.

Furthermore, JLW-TW fails to show that JK Products' actions and communications with regard to its customers–in wrapping up its affairs with JLW-TW–were not privileged. *See Brett v. Time Warner Cable Midwest, LLC*, No. 4:16CV1395, 2017 WL 1284789, at *4 (N.D.Ohio 2017) (Pearson, J.) ("Statements between parties concerning a *common business interest* may be protected by a qualified privilege.") (emphasis added). Once a defendant demonstrates the existence of the qualified privilege, a plaintiff can only prevail upon a showing of "actual malice"

15

(1:19CV1908)

in the communication. *Id.* JLW-TW's claim of tortious interference fails because it cannot show that JK Products' communications with its shared customers were improper or made with malice.

Accordingly, summary judgment is granted in favor of JK Products on JLW-TW's claim of tortious interference with business relationships.

## C. Other Matters

### 1. Motion to Strike Jury Demand

JK Products moves the Court to enter an order striking the jury demand filed by JLW-TW. ECF No. 63 at PageID #: 2787. In its motion, JK Products avers JLW-TW knowingly and voluntarily waived its right to a jury trial when it entered into a distributorship agreement with JK Products, and that the Court should hold Defendant to the parties' agreement. *Id.* JLW-TW requests that the Court decline to enforce the jury waiver clause because JK Products waived the provision. *See* ECF No. 66 at PageID #: 2914-16.

"Although the right to a jury trial is guaranteed by the Constitution, 'like other constitutional rights, [it] can be waived by the parties.'" *Sewell v. Jefferson Cnty. Fiscal Court*, 863 F.2d 461, 464 (6th Cir. 1988) (citations omitted); *see also K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985) ("It is clear that the parties to a contract may by prior written agreement waive the right to jury trial."). When a contract contains an express jury waiver provision, the party objecting to that provision has the burden of demonstrating that its consent to

16

(1:19CV1908)

the waiver was not knowing and voluntary.  *Baumgardner v. Bimbo Food Bakeries Distrib., Inc.,* 697 F.Supp.2d 801, 819 (N.D.Ohio 2010) (quotations omitted); *see also Hergenreder v. Bickford Senior Living Grp.*, 656 F.3d 411, 420 (6th Cir. 2011) (noting for such a waiver to be valid, "this court must ask whether the waiver was knowing and voluntary").

The parties concede the validity of the 2005 distributorship agreement and 2009 terms agreement.  ECF No. 60 at PageID #: 2693.  Section 21(c)(ii) of the 2005 distributorship agreement provides in pertinent part:

> [JK PRODUCTS] AND [JLW-TW] HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED ON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY CAUSE OF CONDUCT, COURSE OF DEALING, ORAL OR WRITTEN STATEMENT, OR ACTIONS OR OMISSIONS OF [JK PRODUCTS] OR [JLW-TW]. THIS PROVISION IS A MATERIAL INDUCEMENT FOR [JK PRODUCTS] TO ENTER INTO THIS AGREEMENT.

ECF No. 60-1 at PageID #: 2703.

In its opposition to JK Products' motion, JLW-TW does not argue that the waiver was procured in an unknowing or involuntary manner, but that JK Products was obligated to mediate the parties' dispute before bringing it federal court–and therefore JK Products "waived" enforcement of the provision.  *See* ECF No. 66 at PageID #: 2914 (relying on Section 21(c)(i)(A) of the 2005 distributorship agreement).  Defendant's argument is not well taken.  The plain language of Section 21(c)(i)(A) (the "Mediation/Arbitration" provision) that JLW-TW relies on states that disputes arising from the distributorship agreement "may" by "agreement of the

17

(1:19CV1908)

Parties" be submitted to mediation–not that it *shall*.  ECF No. 60-1 at PageID #: 2702.[7]

Nevertheless, even if the parties had bound themselves to mediate the instant matter before

bringing it to federal court, enforcement of the jury waiver provision–a separate and independent

clause–is not contingent upon either parties' enforcement (or waiver) of other provisions in the

contract.  *See* id. at PageID #: 2703.

Because the jury waiver provision in the parties' 2005 distributorship agreement was

knowingly and voluntarily made and the product of mutuality of obligation of both parties, the

Court grants JK Products' motion to strike JLW-TW's jury demand.[8]  Surviving claims will

proceed *via* a trial before the undersigned.

### 2.  Motion for Leave to File Answer *Instanter* to First Amended Complaint and Amended Counterclaim

JLW-TW seeks to file an Answer to the First Amended Complaint and an Amended

Counterclaim.  *See* ECF No. 64.  JK Products opposes this request, alleging JK Products was not

diligent in seeking leave and endeavors to make substantive changes to its Counterclaim to assist

in its defense.  ECF No. 72 at PageID #: 3799.

---

[7] JLW-TW does not dispute the terms of the 2005 distributorship agreement and the 2009 terms agreement–which "amended" the 2005 distributorship agreement–govern the parties' contractual relationship.  *See* ECF No. 84 at PageID #: 4466.  Therefore, in the alternative, the jury waiver provision is applicable here because the litigation "aris[es] out of . . . [the] agreement" and the parties' "course of dealing[.]"  *See* ECF No. 60-1 at PageID #: 2703.

[8] JLW-TW's motion for leave to file a sur-reply in opposition to JK Products' Motion to Strike Jury Demand (ECF No. 73) is denied as moot.

(1:19CV1908)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend a pleading shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The grant or denial of a motion to amend is within the sound discretion of the Court. *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). A district court should consider the following factors in ruling on a party's motion to amend: (1) undue delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the movant is acting in bad faith, or with a dilatory motive; (4) failure to cure deficiencies by previous amendments; (5) the possibility of undue prejudice to adverse parties; and (6) whether the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 591 (6th Cir. 1990). While delay alone ordinarily does not justify denial of leave to amend, at some point "delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

Despite Rule 15's liberal stance on amending pleadings, the Court must first consider Rule 16 of the Federal Rules of Civil Procedure which restricts the timing of amendments. Rule 16 states in part that, after receiving the parties' Rule 26(f) report, the district court "must issue a scheduling order" that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(a), (b). Rule 16(b)(4) further provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The rule is designed to ensure "that at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16(b), 1983 Advisory Committee Notes. "The primary measure of Rule 16's 'good cause' standard is the moving party's *diligence* in attempting to meet the case

19

(1:19CV1908)

management order's requirements." *Inge v. Rock Fin. Corp*., 281 F.3d 613, 625 (6th Cir. 2002) (emphasis added).  "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.*

Thus, when a motion to amend is filed before the time prescribed by the case management order, Rule 15(a) is the primary focus.  When the motion to amend is filed *after* the case management order's cutoff, however, a demonstration of good cause under Rule 16(b) is required before a court may consider if an amendment is proper under Rule 15(a).  *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).

JLW-TW's proposed answer and amended counterclaim (ECF No. 64-1) was filed over two months after the cutoff prescribed by the case management plan and order.  *See* ECF No. 31. While JLW-TW avers this tardy filing was made due to a mere "oversight," JK Products points the Court to several, arguably purposeful, "deletions and modifications" (*See* ECF No. 79-1) throughout JLW-TW's proposed Amended Counterclaim.   ECF No. 72 at PageID #: 3800-01. In light of the proposed changes, it appears JLW-TW is seeking leave to amend so that it may retract some of its admissions in light of the contents of JK Products' motion for summary judgment and motion to strike jury demand.

JLW-TW has not shown "good cause" under Rule 16(b) to amend its Counterclaim and therefore the motion (ECF No. 64) is not well taken.  Accordingly, the Court denies JLW-TW's Motion for Leave to File Answer *Instanter* to First Amended Complaint and Amended Counterclaim.

20

(1:19CV1908)

## IV.  Conclusion[9]

For the foregoing reasons, JK Products' motion for summary judgment is granted in part.

Summary Judgment is entered in favor of JK Products on JLW-TW's claims for the breach of

duty of good faith and fair dealing, promissory estoppel, conversion, and tortious interference

with business relationships.  Summary judgment is denied on JK Products' claims of action on

account and unjust enrichment, and on JLW-TW's claim of breach of contract (to the extent

JLW-TW avers JK Products failed to properly credit JLW-TW with applicable credits owed,

pursuant to the parties' distributorship agreement in effect until September 30, 2019).


IT IS SO ORDERED.


 September 14, 2020                               /s/ Benita Y. Pearson
Date                                              Benita Y. Pearson
                                                  United States District Judge


---

[9] JLW-TW's motion for contempt (ECF No. 19) and JK Products' motion for contempt and sanctions (ECF No. 65) will be addressed separately; and, when appropriate, the parties' should expect to argue their relevant positions.  JK Products' unopposed motion for leave to refile a public version of the deposition of Brynn Scarborough with Exhibits 13 and 14 omitted (ECF No. 85) is granted.